# IN UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

### DALLAS DIVISION

| | | |
|---|---|---|
| **ROGER FRALEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 3:11-cv-01060** |
| | § | |
| **BAC HOME LOANS SERVICING, LP** | § | |
| **and FEDERAL NATIONAL** | § | |
| **MORTGAGE ASSOCIATION,** | § | |
| | § | |
| **Defendants.** | § | |

## EXHIBIT INDEX

Plaintiff's Verified Original Petition and Application for Temporary Restraining Order.............. 1

Citations and Returns..................................................................................................................... 2

Docket Sheet ................................................................................................................................... 3

Civil Cover Sheet............................................................................................................................ 4

Supplemental Civil Cover Sheet..................................................................................................... 5

---

**EXHIBIT INDEX**                                                                                       **Solo Page**
Case No. 3:11-cv-01060; *Roger Fraley v. BAC Home Loans Servicing, LP, et al.*

# EXHIBIT 1



CAUSE NO. 1-11-419

| | |
|---|---|
| ROGER FRALEY, § | IN THE DISTRICT COURT |
| Plaintiff, § | |
| § | |
| v. § | 439 JUDICIAL DISTRICT |
| § | |
| BAC HOME LOANS SERVICING, LP, § | |
| and FEDERAL NATIONAL MORTGAGE § | |
| ASSOCIATION, § | |
| § | |
| Defendants. § | ROCKWALL COUNTY, TEXAS |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, ROGER FRALEY, Plaintiff, complaining of BAC HOME LOANS SERVICING, LP, and FEDERAL NATIONAL MORTGAGE ASSOCIATION, Defendants, in this their Plaintiffs' Original Petition and Application for Temporary Restraining Order and for cause of action would respectfully show unto the Court as follows, to-wit:

### I. PARTIES

1.    Plaintiff is an individual who resides in Rockwall County, Texas.

2.    Defendant BAC Home Loans Servicing, LP (hereinafter referred to as "BAC") is a Texas limited partnership and may be served with citation by serving its registered agent, C.T. Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

3.    FEDERAL NATIONAL MORTGAGE ASSOCIATION (hereinafter referred to as "Fannie Mae") is a corporation doing business in the state of Texas and may be served with citation upon its vice president deputy general counsel, Robin Gillespie, at 14221 Dallas Parkway, Suite 1000, Dallas, Texas 75254.

## II. JURISDICTION AND VENUE

4.    The amount in controversy exceeds the minimum jurisdictional limits of this Court, and the Court has jurisdiction over the subject matter.

5.    The Court has jurisdiction over the Defendants in that the Defendants are doing business in Rockwall County, Texas.

6.    As a suit affecting title to land, this court has venue pursuant to Texas Civil Practice and Remedies Code § 15.011. Moreover, venue is proper because all or a substantial part of the events or omissions that gave rise to this claim occurred in this county.

7.    This is a Level 2 case for purposes of discovery.

## III. AGENCY AND RESPONDEAT SUPERIOR

8.    Whenever in this petition it is alleged that a Defendant did, or failed to do, any act, thing and/or omission, it is meant that Defendant itself or its agents, officers, servants, employees, vice principals, or representatives either did or failed to do such act, thing and/or omission, and it was done with the full authorization or ratification of Defendant, and/or done in the normal routine, course and scope of the agency or employment of Defendant or its agents, officers, servants, employees, vice principals, or representatives and/or with actual and/or apparent authority of Defendant.

## IV. FACTS

9.    Plaintiff was and is the rightful owner of the Property, and is currently in possession of the Property located at ██████████████ Rockwall, Texas 75087 ("Property"). The Property is more particularly described as:

> BEING LOT 10, BLOCK F, CRESTVIEW PHASE 3 THE SHORES, AND ADDITION TO THE CITY OF ROCKWALL, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN CABINET D, SLIDE 271, PLAT RECORDS, ROCKWALL COUNTT, TEXAS.

PLAINTIFF'S VERIFIED ORIGINAL PETITION
and APPLICATION FOR TEMPORARY RESTRAINING ORDER                                    Page 2
Fraley

10. On or about January 8, 2008, Plaintiff executed a Note payable to Countrywide Bank, FSB ("Countrywide") for $168,000. On or about the same day, a Deed of Trust to secure the payment of the note was executed by Plaintiffs. *See* Exhibit A, attached hereto and incorporated herein for all purposes. Upon information and belief, BAC purchased the assets of Countrywide.

11. On March 4, 2008, Countrywide sent Plaintiff an escrow account review, which showed a shortage of $7,331.79. The invoice showed that Plaintiff was being charged twice for County taxes, one charge for $3,803.04 and another charge for $3,155.57 for a total of $6,958.61. Plaintiff had just paid $6,586.16 at the closing for the estimated taxes. Plaintiff contacted Countrywide and spoke to William Lucas about the invoice and explained that Countrywide was charging him double the amount of county taxes. Mr. Lucas told Plaintiff that Countrywide failed to include the City of Rockwall taxes and the Rockwall Independent School District taxes in the closing. Mr. Lucas told Plaintiff that Countrywide wanted him to pay the shortage in just four months, which was not included in the good faith estimate upon which Plaintiff relied when he agreed to purchase the property. Mr. Lucas told Plaintiff that he could pay the principal and interest payment and pay his own taxes and insurance instead of having an escrow account. Plaintiff decided to just pay his principal and interest payments and to pay his own insurance and taxes. Later Plaintiff received his tax statement which showed that the total tax for 2008 was $4,889.78, which included the City of Rockwall for $1,077.89, Rockwall IDS for $3,036.43 and the County taxes were only 775.46, not $6,958.61 per Countrywide's March 2008 invoice. Plaintiff at all times disputed owing the amount set forth in the March invoice.

12. Plaintiff lost his job in November 2008 but was able to continue making his mortgage payment. Adding In early 2010, BAC put force-placed insurance on Plaintiff's home

even though Plaintiff had his own insurance. Then BAC increased Plaintiff's mortgage payment because of the increased escrow account. Plaintiff sent copies of his insurance information to BAC, which was ignored. Plaintiff disputed the amount owed and paid his regular payment. As a result, BAC claimed that Plaintiff was past due on his account. On April 14, 2010, BAC's attorneys sent Plaintiff a notice of acceleration and foreclosure letter. BAC claimed that Plaintiff owed $181,998, which was significantly higher than the amount Plaintiff financed. The foreclosure sale was scheduled for June 1, 2010. Plaintiff received another letter dated April 19th, also from BAC's attorneys, that provided options for Plaintiff to avoid foreclosure. Plaintiff called numerous times to try to resolve the issue and stop the foreclosure. Plaintiff was never able to reach anyone at BAC who could help him.

13.    Plaintiff's wife contacted BAC regarding a reinstatement of the note. Mrs. Fraley spoke to Shanna at 11:00 a.m. on May 28, 2010 to no avail. Mrs. Fraley called again and spoke to Libby at 1:14 p.m. Libby told Mrs. Fraley that the amount to reinstate the note was $7,097, but that Plaintiff could pay half, or $3,524.01 to stop the foreclosure. Libby instructed Mrs. Fraley to send a cashier's check to BAC via Western Union. Mrs. Fraley followed Libby's instructions and wired $3,524.01 on May 28, 2010. Mrs. Fraley called BAC to confirm receipt of the funds and to inquire about the foreclosure cancelation. Mrs. Fraley spoke to Teresa at 9:50 a.m. Teresa did not know the answer and referred Mrs. Fraley to BAC's attorneys. Mrs. Fraley called BAC's attorneys and spoke to Margaret. Margaret informed Mrs. Fraley that it would take 3-5 days to get a reinstatement amount and to call back after the 3-5 days.

10.    Even though Plaintiff paid the $3,524.01 as a partial reinstatement, BAC foreclosed on his property on June 1, 2010. Unbeknownst to Plaintiff, however, BAC sold Plaintiff's property to Fannie Mae for $187,669.20, which was significantly more than the

**PLAINTIFF'S VERIFIED ORIGINAL PETITION**
**and APPLICATION FOR TEMPORARY RESTRAINING ORDER**                                   Page 4
Fraley

principal balance of the note and significantly less than that market value of the property. Mrs. Fraley called BAC's attorneys requesting a rescission of the foreclosure and reinstatement of the note. BAC's attorneys sent Plaintiff a letter dated June 21, 2010 with the rescission and documents for Plaintiff to sign regarding the rescission. Plaintiff executed the documents and returned them to BAC's attorneys. After the rescission, Plaintiff's wife attempted to contact BAC for a reinstatement quote. However, because she was not on the note, BAC would not discuss Plaintiff's account. BAC referred Plaintiff to its attorneys. Plaintiff's spouse finally spoke to Katrina Tomkus, one of BAC's attorneys, and was informed that BAC had not yet signed the rescission documents. Plaintiff tried several times to contact Katrina regarding his mortgage. Plaintiff attempted many times in July 2010 to find out what amount was required to reinstate his note. BAC never provided that information to Plaintiff. Despite the alleged rescission, Fannie Mae's agents posted a vacate notice on Plaintiff's property on August 2, 2010. Plaintiff contacted Fannie Mae's agent and reported that the foreclosure was rescinded.

14. Plaintiff was unable to obtain a reinstatement amount from BAC or its attorneys so he hired a law firm to handle this request. Plaintiff finally received a reinstatement quote that was dated September 6, 2010. Plaintiff did not understand all the fees and charges listed on the reinstatement quote, especially the $11,891 owed on the escrow account. Further, the reinstatement quote stated that figures were subject to verification. Recall that Plaintiff had insurance when BAC put force-placed insurance on the property, which caused Plaintiff's escrow account to have a shortage. Plaintiff called BAC frequently to ask questions about the reinstatement quote but each time the voice mail recorded said "The que is full." Plaintiff's attorney sent BAC's attorneys a letter dated September 13, 2010 in which he stated that Plaintiff was ready, willing and able to pay all sums legally owed and that Plaintiff had tried to make

interim payments, but BAC refused to accept them. Further, the letter asked BAC's attorneys to contact Plaintiff to explain the reinstatement quote.  On September 17, 2010, Plaintiff attempted to make a payment to BAC for $4,698.76, which was four months' payments, but BAC refused to accept the payment.

15.   Plaintiff's attorney finally spoke to Sonya, one of BAC's attorneys on September 21, 2010.  Plaintiff's attorney memorialized the conversation in a letter he sent to Sonya dated September 21, 2010. In that letter, Plaintiff's attorney thanked Sonja for agreeing to send him a breakdown of the $11,891.72 allegedly owed on the escrow account, that the account was currently in "suspense" until the escrow account issues were resolved and that Sonja would notify Plaintiff and his attorney if any foreclosure was set in the future.  On September 27, 2010, BAC's attorneys sent Plaintiff's attorney a letter with an attached copy of the note and Deed of Trust.  Further, the letter advised Plaintiff's counsel that it had requested a breakdown of the escrow balance.  On November 22, 2010, BAC's attorneys sent Plaintiff's counsel a letter with a payment history on Plaintiff's account.  Further, the letter instructed Plaintiff's counsel to have Plaintiff contact the bank directly for available options.  The payment history showed that Plaintiff made a payment in February 2009 that was reversed on April 8, 2009 with no explanation.  Plaintiff and his attorney reviewed the information and neither could determine what the charges were or if it was accurate.  Plaintiff was still waiting for a final reinstatement quote.

16.   Plaintiff received a notice of foreclosure letter dated December 21, 2010 with a foreclosure sale scheduled for February 1, 2011.  BAC's attorneys finally sent Plaintiff's counsel an itemized statement of Plaintiff's escrow account on January 19, 2011.  Plaintiff disputed the amount owed for taxes and the force-placed insurance.  On January 31, 2011, Plaintiff's counsel

sent BAC's attorneys a letter wherein he again requested a reinstatement quote for all fees owed and a request that BAC cancel the foreclosure sale. Unbeknownst to Plaintiff, BAC sold Plaintiff's home at the foreclosure sale on February 1, 2011. BAC never provided Plaintiff with a notice of intent to accelerate or with the full amount required to reinstate Plaintiff's note. Plaintiff has become totally frustrated in his efforts to communicate with Defendants. The requirement of good faith and fair dealing is included in the performance of every contract. Tex. Bus. & Com. Code § 1.201(20); 9.102(c). BAC's conduct of deliberately, (or negligently) delaying and misleading Plaintiff to the point of foreclosure is unconscionable. During that time BAC added additional charges to Plaintiff's account and it waived its right to accelerate and foreclose. *Longview Savings & Loan Association v. Nabours*, 673 S.W.2d 357 (Tex.App.-Texarkana 1984, aff'd on other grounds); *Trickey v. Gumm*, 632 S.W.2d 167 (Tex. App.—Waco 1982, no writ); *Bodiford v. Parker*, 651 S.W.2d 338 (Tex. App.—Fort Worth 1983); *Dhanani Inv., Inc. v. Second Master Bilt Homes, Inc.*, 650 S.W.2d 220 (Tex. App.-Fort Worth 1983); *McGowan v. Pasol*, 605 S.W.2d 728 (Tex. Civ. App.—Corpus Christi 1980); *Vaughn v Crown Plumbing & Sewer Serv., Inc.*, 523 S.W.2d 72 (Tex. Civ. App.—Houston [1st Dist.] 1975). See also *John Hancock Mut. Life Ins. Co. v. Howard*, 85 S.W.2d 986 (Tex. Civ. App.-Waco 1935, writ ref'd). )([Plaintiffs' rights] are based on an alleged temporary waiver by the insurance company of its right to sell the property under the deed of trust. Such a waiver requires no consideration . . . in the insurance company [is] estopped to take advantage of its wrong and to insist upon the validity of the sale.).

17. BAC, through various agents and representatives, have made numerous demands and representations concerning the amounts allegedly owed on Plaintiffs' mortgage loans which are false, inaccurate, and were made recklessly, and with total disregard for the truth or validity



thereof. The demands made in connection therewith, and the actions taken to accelerate and post the property for foreclosure were made unlawfully. BAC never gave Plaintiff the right to cure the default or reinstate the note. Now, Fannie Mae is attempting to evict Plaintiff who are currently occupying the property.

18. By this pleading, Plaintiffs seeks a Temporary Restraining Order, as well as other remedies set forth herein.

## V.  CAUSES OF ACTIONS

### Breach of Contract and Anticipatory Breach of Contract

19. Plaintiff incorporates by reference the allegations set forth above, as if the same were fully set forth herein.

20. BAC wrongfully foreclosed on the Property. BAC has not only violated the Texas Property Code and breached the Deed of Trust contract, but also had no standing to foreclose.

21. Further, the foreclosure was improper because Plaintiff remained in default only because BAC failed to give Plaintiff an opportunity to pay the past due installments before acceleration of the entire indebtedness. *See Diversified Inc. v.* Walker, 702 S.W. 2d 717, 719 (Tex.App.-Houston [1st Dist.] 1985, writ ref., n.r.e.) (RCSng Williamson *v. Dunlap,* 69 S.W. 2d 373, 374 (Tex. 1985). Defendants were required to demand past due installments before exercising the option to accelerate. *Id.* Defendants failed to do so. Defendants' actions not only breached the contract, but prevented Plaintiffs from performing the contract.

22. BAC put force-placed insurance on the property even though Plaintiff had his own insurance. BAC then charged Plaintiff and increased monthly payment for insurance Plaintiff already had. Plaintiff tried for months to correct BAC's mistake. From around March

2010 through February 2011, Plaintiff made numerous requests for a reinstatement quote for the full amount to cure any alleged default. The requirement of good faith and fair dealing is included in the performance of every contract. Tex. Bus. & Com. Code § 1.201(20); 9.102(c). BAC's conduct of deliberately, (or negligently) delaying and misleading Plaintiff to the point of foreclosure is unconscionable. BAC intentionally continued to mislead Plaintiff by telling him different amounts to pay to reinstate the note but the amounts were not accurate so Plaintiff was not able to cure the alleged default. Such conduct constitutes a waiver of the right to accelerate and foreclose. Loss of the right to accelerate may result from inconsistent or inequitable conduct on the part of the holder of a promissory note. *Vaughn v. Crown Plumbing & Sewer Service, Inc.*, 523 S.W.2d 72 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.); *Matter of Marriage of Rutherford*, 573 S.W.2d 299 (Tex. Civ. App.—Amarillo 1978, not writ); *Diamond v. Hodges*, 58 S.W.3d 187 (Tex. Civ. App.—Dallas 1933, no writ). Therefore, Defendant waived its right to accelerate and foreclose and are estopped. *Longview Savings & Loan Association v. Nabours*, 673 S.W.2d 357 (Tex. App.-Texarkana 1984, aff'd on other grounds); *Trickey v. Gumm*, 632 S.W.2d 167 (Tex. App.—Waco 1982, no writ); *Bodiford v. Parker*, 651 S.W.2d 338 (Tex. App.—Fort Worth 1983, no writ); *Dhanani Inv., Inc. v. Second Master Bilt Homes, Inc.*, 650 S.W.2d 220 (Tex. App.-Fort Worth 1983, no writ); *McGowan v. Pasol*, 605 S.W.2d 728 (Tex. Civ. App.—Corpus Christi 1980, no writ); *Vaughn v Crown Plumbing & Sewer Serv., Inc.*, 523 S.W.2d 72 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). See also *John Hancock Mut. Life Ins. Co. v. Howard*, 85 S.W.2d 986 (Tex. Civ. App.-Waco 1935, writ ref'd).

23.     As a result of BAC's wrongful conduct described above, BAC had no right to foreclosure. The breach of the contract and the anticipatory breach of the contract, as set forth



above were a proximate cause of Plaintiff's damages as set forth below. Plaintiff has incurred damages, including loss of the title to the property, mental anguish, and attorneys' fees.

### Breach of Common Law Tort of Unreasonable Collection Efforts

24.    Plaintiff realleges the allegations contained above, inclusive, and incorporate the same herein by reference.

25.    This is a cause of action for the commission of unreasonable collection efforts in violation of the common law of the State of Texas against BAC.

26.    By such actions and course of conduct, whereby BAC deceptively foreclosed and based on information and belief imposed numerous additional charges upon Plaintiff's mortgage loan account, BAC has slandered Plaintiff's credit reputation, defamed his credit and exposed him to ridicule in the community, thereby causing him further economic damages. Additionally, as set forth above, Plaintiff has suffered extreme and several mental anguish and emotional distress resulting in loss of income and mental suffering.

27.    Such acts and practices of the BAC have been unreasonable and have violated the ordinary standard of care required of mortgage loan companies, which breach of duty has proximately caused damages to Plaintiff exceeding the minimum jurisdictional limits of this Court. Plaintiff therefore seeks recovery of all of his actual damages proximately caused by such violations of law, including but not limited to recovery of all actual damages sustained, all actual direct and indirect economic damages, including but not limited to damages for loss of credit and damages to credit reputation, and mental anguish and emotional distress, any consequential damages, and punitive damages all in amounts exceeding the minimum jurisdictional limits of this Court.

### *Texas Consumer Credit Code/Debt Collection Practices Act*

28.   Plaintiff realleges the allegations contained above, inclusive, and incorporate the same herein by reference.

29.   This includes an action for violations of the Texas Debt Collection Practices Act, §§ 392.001 et seq., Texas Finance Code against Defendant BAC.

30.   Plaintiff is a "consumer" within the meaning of § 392.001 of the Texas Finance Code, and the debt in question relating to the property is a "consumer debt" within the meaning of such statute.

31.   Upon information and belief, the acts, omissions, and conduct of BAC, as alleged above, constitute violations of the following provisions of the Texas Debt Collection Practices Act:

    a)   Using a deceptive means to collect a debt, i.e. telling Plaintiffs that it was canceling the foreclosure. § 392.304(19) Tex. Fin. Code.

    b)   Misrepresenting the character, extent, or amount of a consumer debt, in violation of § 392.304(a)(8) of the Texas Finance Code.

    c)   Violating § 392.303(a)(2) of the Tex. Fin. Code; and

    d)   Violating § 392.301(a)(8) of the Tex. Fin. Code.

32.   Through its communications and demands, BAC deceptively put force-placed insurance on Plaintiff's home even though it was already insured.  BAC then added late fees and interest and deceptively increased Plaintiff escrow payments. BAC later stated reinstatement quotes that were not accurate and then deceptively foreclosed on Plaintiffs' property.

33.   Pursuant to such violations of law, Plaintiff is entitled to relief provided by §392.403 of the Texas Finance Code, including by not limited to recovery of all actual damages sustained as a result of violations of such provisions of the Texas Debt Collection Practices Act,

all actual direct and indirect economic damages, including but not limited to damages for loss of credit and damage to credit reputation, attorneys' fees, and mental anguish and emotional distress, damages resulting from payment of excess or additional interest, and any consequential damages, all in amounts exceeding the minimum jurisdiction limits of the Court.

34.    Also, pursuant to § 392.403 of the Texas Finance Code, Plaintiff is entitled to recover his attorneys' fees reasonably related to the amount of work performed and costs, for all actions in the trial court, the Court of Appeals, and the Texas Supreme Court, in amounts exceeding the minimum jurisdiction limits of this Court. Pursuant to the § 392.404 of the Texas Finance Code, all of the above and foregoing violations of the Texas Finance Code also constitute deceptive trade practices in violation of the Texas Deceptive Trade Practices Act, and are actionable thereunder. Therefore, Plaintiff is entitled to recovery of all his actual and consequential damages including the value of the time that Plaintiff spent trying to obtain the correct amount to pay on the loan, of which such illegal acts are the producing cause, and other relief as deemed appropriate by the Court, pursuant to Section 17.50 of the Texas Deceptive Trade Practices Act.

35.    Such actual and consequential damages, plus interest to the maximum allowed by law, should be trebled pursuant to applicable provisions of law, and/or any punitive damages awarded in amounts exceeding the minimum jurisdiction limits of this Court, assessed against Defendant.

### *Accounting*

36.    Plaintiff requests an Order for an accounting of all transactions on his mortgage loan.

### *Suit to Quiet Title and Trespass to Try Title*

37.    Fannie Mae has impermissibly declared Plaintiff to be tenants at sufferance in the property in violation of state statutes and constitution.  Fannie Mae's claim to the title and possession of the Property are improper, and Plaintiff seeks the judgment of the court to quiet Plaintiff's claims and award and declare clear and uncontested title and possession of the property to Plaintiff.

38.    Plaintiff's title and Fannie Mae's trustee's deed are both derivative of the same Warranty Deed.  The sellers are the common source, but since the trustee's sale is void, Fannie Mae obtained no title.  *See Slaughter v. Qualls*, 162 S.W.2d 671 (Tex. 1942); *First Southern Properties v. Henke*, 586 S.W.2d 617, 620 (Tex. App.—Waco 1979, writ ref'd. n.r.e.) (a purchaser at a trustee's sale buys at their own peril. If the trustee conducting the sale has no power or authority to offer the property for sale, or if there is other defect or irregularity which would render the foreclosure sale void, then the purchaser cannot acquire title the property.). Absent the right to foreclose, the trustee could not transfer ownership of the property to Freddie Mac.  *A Plus Inv., Inc. v. Rushton*, 2004 WL 868866 (Tex. App. – Fort Worth, 2004, no writ).

*Negligent Misrepresentation/Gross Negligence*

39.    Plaintiff realleges the allegations contained above, inclusive, and incorporate the same herein by reference.

40.    BAC, in the course and scope of its business, made representations to Plaintiff regarding his mortgage account. The information was false.

41.    The Defendant failed to use reasonable care in communicating the correct status of Plaintiff's mortgage loan.  Plaintiff relied on the representations to his detriment.  The representations by the BAC involved a transaction to which the BAC has a pecuniary interest. However, the representations were false and the BAC wrongfully foreclosed on Plaintiff's

property, causing Plaintiff to sustain damages, including but not limited to court costs, actual damages and exemplary damages.

### *Declaratory Judgment*

42..    Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Plaintiff reques that this court consider the terms of the Deed of Trust contract and Note and find that Plaintiff have not materially breached the Deed of Trust contract on the property, that BAC wrongfully foreclosed on Plaintiffs' property, and that the Substitute Trustee's Deed should be set aside.

## VI. DAMAGES

43.    As a proximate result of the above, Plaintiff has incurred, or will incur the following actual damages:

A.    Reasonable and necessary attorney's fees and costs in the proceedings before this court, and those fees required for any appeal to the Court of Appeals, and thereafter to the Supreme Court.

B.    The loss of creditworthiness and the stigma of foreclosure.

C.    Mental anguish and acute psychic trauma.

D.    The loss of title to his home.

E.    The value of the time lost in attempting to correct BAC's records.

F.    The market value of their property, after the deduction of the balance due.

## VII. DEMAND FOR JURY

44.    Plaintiff demands a jury trial and tender the appropriate fee.

## VIII. APPLICATION FOR TEMPORARY RESTRAINING ORDER

45.    Despite the wrongful nature of the aforementioned foreclosure, Fannie Mae may proceed to evict Plaintiff from the property and attempt to sell the property.

56.    Unless restrained, Fannie Mae will proceed with the aforementioned action to sell the property. There is no remedy at law that is clear and adequate to protect Plaintiff's property interests against BAC's wrongful foreclosure of the property, because such an action will deprive Plaintiff of the use and enjoyment of the property, the right to sell or mortgage the property at some future date, and Plaintiffswill not obtain the full benefit of accumulated equity or appreciated value. Further, Plaintiff will suffer irreparable harm and the issues and rights sought to be adjudicated will become moot unless such action is restrained and enjoined. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002).

47.    This request for injunctive relief is so that justice may be done, not merely for delay. Plaintiff has performed all conditions precedent and are ready, willing, and able to perform such equitable acts as the court deems necessary.

48.    A trial court may grant equitable relief when a dispute involves real property. *Butnaru v. Ford Motor Company*, 84 S.W.3d 198 (Tex. 2002).

49.    Plaintiff requests that the Restraining Order and Temporary Injunction be made into a permanent injunction.

## IX. REQUEST FOR DISCLOSURE

50.    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiff hereby requests Defendants to disclose, within fifty (50) days of service of this request, the information and material described in Rule 194.2 (a)-(1).

## XI. PRAYER

WHEREFORE, Plaintiff requests that:

PLAINTIFF'S VERIFIED ORIGINAL PETITION
and APPLICATION FOR TEMPORARY RESTRAINING ORDER                                    Page 15
Fraley

a) The Court issue a temporary restraining order without notice to Defendant Fannie Mae, restraining Defendant, its agents, servants, employees, attorneys, Trustees and Substitute Trustees, from evicting Plaintiff, or directly or indirectly selling or attempting to sell the property, under the power of sale contained in the Deed of Trust.

b) Defendant Fannie Mae be cited to appear and show cause, and that upon hearing, a temporary injunction be issued enjoining Defendant, its agents, attorneys, servants, and employees, Trustees and Substitute Trustees, from evicting Plaintiff, or directly or indirectly selling or attempting to sell the property under the power of sale contained in the Deed of Trust.

c) The Court find that the conduct of the BAC was so deplorable that Plaintiff is entitled to exemplary damages.

d) The temporary injunction remain in place and that upon final trial a permanent injunction be issued enjoining Defendant Fannie Mae, its agents, attorneys, servants, and employees, Trustees and Substitute Trustees, from evicting Plaintiff, or directly or indirectly selling or attempting to sell the property under the power of sale contained in the Deed of Trust.

e) The Court DECLARE that the foreclosure was wrongful, pursuant to the Texas Declaratory Judgment Act.

f) Plaintiff recover his actual damages, out-of-pocket damages, including but not limited to damages for clouding the title/slander of title concerning said residence, harm to credit reputation, credit worthiness, and credit history, mental anguish, emotional distress, anxiety, depression, humiliation, and the value of time lost trying to remedy the problem, against Defendant BAC.

g) Plaintiff recover punitive and/or treble damages.

h) Plaintiff have reasonable and necessary attorney's fees in this action and resulting writs or appeals; or, in the alternative, Plaintiff's attorneys have costs of court and reasonable and necessary attorneys fees in this action and resulting writs or appeals, and the same be taxed as costs and ordered paid directly to Plaintiff's attorneys, who may enforce the order for fees in their own name.

i) Defendants be ordered to render an accounting to Plaintiff of the amounts paid and owed pursuant to the Real Estate Settlement and Procedures Act (12 U.S.C. Section 2605(e)).

j) That upon final trial, the acceleration of the Note be set aside, and the Note be reinstated according to law without applicable late charges, penalties, and interest.

PLAINTIFF'S VERIFIED ORIGINAL PETITION
and APPLICATION FOR TEMPORARY RESTRAINING ORDER                    Page 16
Fraley

k) That the Court find that the Substitute Trustee's Deed in favor of Defendant Fannie Mae is void and should, in all things, be set aside and vacated and title be shown to be vested in Plaintiffs, and Plaintiff be granted possession of the property

l) Such other and further relief in equity and at law to which Plaintiff may be justly entitled.

Respectfully Submitted,

**GAGNON, PEACOCK,**
**SHANKLIN & VEREEKE, P.C.**
4245 N. Central Expressway
Suite 250, Lock Box 104
Dallas, Texas 75205
Telephone: (214) 824-1414
Facsimile: (214) 824-5490
Email: attorneys@gapslaw.com

By: _____
J. B. Peacock, Jr.
State Bar No. 15678500
D. G. Gagnon
State Bar No. 00798423
Cynthia K. Shanklin
State Bar No. 24004914
David M. Vereeke
State Bar No. 20547500

ATTORNEYS FOR PLAINTIFF

STATE OF TEXAS           §

COUNTY OF DALLAS         §

## VERIFICATION

BEFORE ME, the undersigned Notary Public, on this day personally appeared Roger J. Fraley, who being by me duly sworn on his oath deposed and said that he is the Plaintiff in the above-entitled and numbered cause; that he has read the above and foregoing Plaintiff's Verified Original Petition and Application for Temporary Restraining Order; and that the facts contained therein are either within his personal knowledge and are true and correct.

_____
Roger J. Fraley

SUBSCRIBED AND SWORN TO BEFORE ME on the 15th day of April, 2011, to certify which witness my hand and official seal.



Brenda Espino
Notary Public.
State of Texas
Comm. Exp. 02-20-15

_____
Notary Public