IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROGER FRALEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-1060-N-BK |
| | § | |
| BAC HOME LOANS SERVICING, LP, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

This case has been referred to the undersigned for pretrial management. (Doc. 18). The Court now considers *Defendant's Motion to Dismiss Plaintiff's Verified Original Petition and Application for Temporary Restraining Order* (Doc. 8). For the reasons discussed below, it is recommended that the motion be GRANTED in part and DENIED in part.

**I. BACKGROUND[1]**

On April 19, 2011, Plaintiff Roger Fraley brought this suit in state court against Bank of America Home Loans Servicing (BAC) and the Federal National Mortgage Association (Fannie Mae), in connection with the foreclosure of his home. (Doc. 1-1 at 4-10). In his *Petition*, Plaintiff alleges causes of action for: 1) breach of contract and anticipatory breach of contract; 2) breach of common law tort of unreasonable collection efforts; 3) violations of the Texas Debt Collections Practices Act (TDCPA) and the Texas Deceptive Trade Practices Act (DTPA); 4) an accounting; 5) suit to quiet title and trespass to try title; 6) negligent misrepresentation/gross

---

[1] In deciding this Rule 12(b)(6) motion, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoted case omitted).

1

negligence; and 7) a declaratory judgment. *Id*. at 10-16. Plaintiff also requests a temporary restraining order (TRO). *Id*. at 10.

Plaintiff alleges that on January 8, 2008, he "executed a Note payable to Countywide Bank, FSB (Countrywide) for $168,000," and, "on or about the same day," he executed a "Deed of Trust to secure payment of the note." *Id*. at 5. On March 4, 2008, Countrywide sent Plaintiff an "escrow account review, which showed a shortage of $7,331.79." *Id*. "The invoice showed that Plaintiff was being charged twice for County taxes," as Plaintiff had just paid the estimated taxes at closing. *Id*. Plaintiff then contacted Countrywide and was told Countrywide failed to include certain taxes at closing. *Id*. A Countrywide representative also told Plaintiff that he could pay only the principle and interest payment and pay his taxes and insurance on his own instead of having an escrow account; which Plaintiff opted to do. *Id*. Plaintiff later received his tax statement which showed the total taxes were substantially lower than Countrywide's invoice. *Id*. Plaintiff avers that "at all times [he] disputed owing the amount set forth in the March invoice." *Id*.

Plaintiff avers, on information and belief, that BAC later "purchased the assets of Countrywide." *Id*. In 2010, BAC "put force-placed insurance on Plaintiff's home even though Plaintiff had his own insurance" and "increased Plaintiff's mortgage payment because of the increased escrow amount." *Id*. at 5-6. Plaintiff disputed the increased amount owed and made his regular payment. *Id*. at 6.

On April 14, 2010, BAC sent Plaintiff a "notice of acceleration and foreclosure letter," claiming Plaintiff owed $181,998, and scheduling a foreclosure sale for June 1, 2010. *Id*. Plaintiff received another letter on April 19, 2010, that provided options for Plaintiff to avoid foreclosure; however, Plaintiff was never able to reach anyone at BAC who could help him. *Id*.

On May 28, 2010, Plaintiff's wife called BAC and was told the amount to reinstate the note was $7,097, but that Plaintiff could pay $3,524.01 to stop the foreclosure. *Id*.

Even though Plaintiff paid the $3,524.01, BAC foreclosed on Plaintiff's property on June 1, 2010, and sold the property to Fannie Mae for $187,669.20. *Id*. However, after Plaintiff contacted BAC's attorneys, BAC sent Plaintiff a letter with documents for Plaintiff to sign regarding the rescission of the foreclosure sale. *Id*. at 7. Thereafter, Plaintiff tried several times to contact BAC regarding his mortgage and to get an updated reinstatement quote. *Id*. BAC never provided Plaintiff that information, and "despite the alleged rescission," Fannie Mae posted a vacate notice on Plaintiff's property on August 2, 2010. *Id*.

On September 6, 2010, after hiring an attorney, Plaintiff was able to obtain a reinstatement quote from BAC. *Id*. "Plaintiff did not understand all the fees and charges listed on the reinstatement quote, especially the $11,891 owed on the escrow amount." *Id*. Plaintiff unsuccessfully attempted to contact BAC, and, on September 13, 2010, Plaintiff's attorney sent BAC a letter stating that Plaintiff was "ready, willing and able to pay all sums legally owed and that Plaintiff had tried to make interim payments, but BAC refused to accept them." *Id*. at 7-8. The letter further requested that BAC's attorneys contact Plaintiff to explain the amount quoted for reinstatement. *Id*. at 8. On September 17, 2010, BAC refused to accept Plaintiff's payment of $4,698.76. *Id*.

On September 21, 2010, Plaintiff's counsel spoke with counsel for BAC, at which time BAC agreed to send Plaintiff an itemization of the $11,891.72 allegedly owed on the escrow account and stated that Plaintiff's account was "in 'suspense' until the escrow account issues were resolved." *Id*. On November 22, 2010, BAC's attorneys sent Plaintiff's counsel a letter with a payment history on Plaintiff's account and instructed Plaintiff to contact BAC for

"available options." *Id*. "Plaintiff and his attorney reviewed the information and neither could determine what the charges were or if it was accurate." *Id*.

On December 21, 2010, Plaintiff received a notice that a foreclosure sale was scheduled for February 1, 2011. *Id*. On January 19, 2011, Plaintiff received an itemized statement of his escrow account, which Plaintiff disputed. *Id*. On February 1, 2011, BAC again sold Plaintiff's property at a foreclosure sale, without providing to Plaintiff a "notice of intent to accelerate" or "the full amount required to reinstate Plaintiff's note." *Id*. at 9. Fannie Mae is now attempting to evict Plaintiff from the property. *Id*. at 10.

On May 5, 2011, Defendants removed the action to this Court on the basis of diversity of the parties and, on July, 5, 2011, filed their motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded[2] and Defendants have filed a reply. (Docs. 12, 15).

## II. APPLICABLE LAW

Motions to dismiss under Rule 12 (b)(6) of the Federal Rules of Civil Procedure are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). However, a complaint must be dismissed pursuant to Rule 12(b)(6) if it fails to state a claim upon which relief may be granted. Under the Rule 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). When considering a motion to dismiss, the court accepts as true all well-pleaded facts and views those facts in a light most favorable to the plaintiff. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Dismissal is only required when a complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[2] Plaintiff, now *pro se*, was still represented by counsel when his response to the motion to dismiss was filed.

reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal*, 129 S.Ct. at 1950.

A plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell*, 43 F.3d at 975. Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity; the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted). A complaint, thus, is not sufficient if it merely contains "naked assertions" devoid of factual enhancement. *Iqbal*, 129 at 1949. The tenet that a court must accept as true all allegations contained in a complaint when ruling on a Rule 12(b)(6) motion is inapplicable to legal conclusions. *Id*. However, a complaint need not set forth all the facts upon which a claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 545.

### III. DISCUSSION

#### A. Breach and Anticipatory Breach of Contract

Defendants argue that Plaintiff has failed to allege a claim for breach of contract because the facts presented by Plaintiff show he was in default and therefore did not perform his part of the bargain under the contract. (Doc. 8-1 at 10-11). In addition, Defendants contend that Plaintiff's anticipatory breach of contract claim fails because Plaintiff has not demonstrated that

Defendants intended to abandon their obligations under the Deed of Trust. *Id*. In response, Plaintiff maintains that Defendants waived his alleged default and, subsequent to that waiver, breached the Deed of Trust by failing to comply with the Texas Property Code. (Doc. 12-1 at 10-16). Additionally, Plaintiff argues that he has pled sufficient facts to illustrate Defendants' absolute repudiation of their contractual obligations. *Id*. at 16. In reply, Defendants contend that they did not waive Plaintiff's breach, did not violate the Texas Property Code, and that there was no anticipatory breach. (Doc. 15 at 2-4).

### *1. Breach of Contract*

Under Texas law, to plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract; (2) that he performed or tendered performance under the contract; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages as a result of the breach. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003). Plaintiff's breach of contract claims are premised on Defendant's (1) violations of the Texas Property Code, (2) failure to inform Plaintiff of the amount required to reinstate the note, (3) adding the costs of payment of unnecessary insurance and erroneous taxes to Plaintiff's escrow account, resulting in an increased monthly payment, and (4) wrongly refusing to accept Plaintiff's mortgage payments. (Doc. 1-1 at 10-11). Viewing all the factual allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has properly pled a cause of action for breach of the note and deed of trust.

At this stage, the Court does not consider the veracity or plausibility of Plaintiff's allegations, but assumes that they are true. Here, Plaintiff alleges (1) the existence of a valid contract; (2) that he tendered, or attempted to tender, performance under the contract by making his regular payments; (3) that Defendant breached the contract by foreclosing on the property,

and (4) that he was damaged thereby. (Doc. 1-1 at 4-12). In sum, Plaintiff has alleged that Defendant's action of erroneously increasing Plaintiff's monthly payments directly caused the very circumstances which Defendant subsequently asserted constituted Plaintiff's breach. Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract claim for failure to state a claim should be denied.

### 2. Duty of Good Faith and Fair Dealing

However, to the extent Plaintiff's breach of contract claim arises under the duty of good faith and fair dealing, such claim fails as a matter of law. *See* Doc. 1-1 at 11. The Texas U.C.C.'s duty of good faith and fair dealing does not apply to the lender-borrower relationship. *Hall v. Resolution Trust Corp.,* 958 F.2d 75, 79 (5th Cir. 1992); *FDIC v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990). Thus, Plaintiff's claim that Defendants' breached their duty to act in good faith and deal fairly should be dismissed.

### 3. Anticipatory Breach of Contract

Plaintiff's claim for anticipatory breach similarly fails. To properly plead a claim for anticipatory breach of contract in Texas, a plaintiff must show: (1) absolute repudiation of the obligation; (2) lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party. *Gonzalez v. Denning,* 394 F.3d 388, 394 (5th Cir. 2004). An anticipatory repudiation of a contract may consist of either words or actions by a party to the contract that indicate an intention that he or she is not going to perform the contract according to its terms. *Navarez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 631 (N.D. Tex. 2010). The declaration of intent to abandon the obligation must be in positive and unconditional terms. *Id*. It is not sufficient if a party makes a genuine mistake or endures a misunderstanding as to matters of fact or law that causes that party not to comply with its obligations. Rather, the party must recognize its duties

but refuse to perform them. *Id.* Here, Plaintiff has not and cannot plead facts from which it can be inferred that Defendants "positively and unconditionally demonstrated an intent to abandon their obligations under the deed of trust." *Id.* at 631-32. Therefore, Plaintiff's claim for anticipatory breach of contract should be dismissed for failure to state a claim.

**B. Unreasonable Collection Efforts**

Next, Defendants argue that Plaintiff has failed to state a claim for the common law tort of unreasonable collection efforts because (1) Plaintiff defaulted on his payment obligation, (2) the deed of trust allows for collection under such circumstances, and (4) Plaintiff has failed to allege facts which demonstrate that Defendants' actions were willful, wanton, or malicious. (Doc. 8-1 at 13-14). Plaintiff responds that he has sufficiently pled a claim for unreasonable collection efforts by averring that Defendants failed to respond to Plaintiff's requests for clarification on the status of his account, represented the property would not be foreclosed, and accepted Plaintiff's partial payment for reinstatement but foreclosed nonetheless. (Doc. 12-1 at 18).

The intentional tort of unreasonable collection involves collection efforts that "amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.–Dallas 2008). A cause of action for this tort typically is only viable if a lender attempts to collect a debt that is not owed. *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (collecting state and federal cases). In the present case, however, Plaintiff did not allege any facts that would show that Defendants engaged in a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm. At most, Plaintiff presents the case that Defendants were negligent in saddling him with extra expenses that he, in

fact, did not owe. Accordingly, Plaintiff's claim for unreasonable collection efforts should be dismissed for failure to state a claim. However, it is recommended that Plaintiff be given an opportunity to amend his complaint to re-plead his unreasonable collection effort claim with greater specificity, if he can, prior to dismissal.

**C. Violations of the Texas Debt Collections Practices Act (TDCPA) and DTPA**

Defendants claim that Plaintiff's TDCPA claims should be dismissed because: 1) foreclosure is not an act of debt collection under the TDCPA; 2) Plaintiff has failed to show he suffered an injury as a result of the alleged violations; and 3) Plaintiff has failed to plead facts showing a violation of section 392.301(a)(8) of TDCPA. (Doc. 8-1 at 14-18). In addition, Defendants aver that Plaintiff's claim under the DTPA fails because Plaintiff is not a "consumer" under the DTPA. *Id.* at 18-19.

The petition alleges that Defendant BAC, a "debt collector," violated the following provisions of the TDCPA: (1) using a deceptive means to collect a debt, in violation of TEX. FIN. CODE § 392.304(a)(19); (2) misrepresentation of the character, extent, or amount of a consumer debt, in violation of TEX. FIN. CODE § 392.304(a)(8); (3) collecting interest or another fee incidental to the obligation owed unless the other fees were expressly authorized, in violation of TEX. FIN. CODE § 392.303(a)(2); and using threats or coercion to take an action prohibited by law, in violation of TEX. FIN. CODE § 392.301(a)(8). (Doc. 1-1 at 13). In his response, Plaintiff asserts that: 1) foreclosure is a form of debt collection; 2) he has pled sufficient facts to show he suffered damage as a result of the TDCPA violations, 3) he has pled a plausible claim under section 392.301(a)(8); and 4) he does not have to show he is a "consumer" under the DTPA because he is proceeding through a "tie-in" provision. (Doc. 12-1 at 22).

*1. TDCPA claims*

The TDCPA prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts. *See Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). A "debt collector" is one "who directly or indirectly engages in debt collection." TEX. FIN. CODE § 392.001(6). The TDCPA's definition of "debt collectors" encompasses creditors collecting their own debts. *Monroe v. Frank*, 936 S.W.2d 654, 659-60 (Tex.App.– Dallas 1996). Moreover, despite Defendants' arguments to the contrary, "foreclosure actions inevitably involve a debt collection aspect" that is actionable under the TDCPA. *Biggers v. BAC Home Loans Servicing*, LP, 767 F. Supp. 2d 725, 732 (N.D. Tex. February 10, 2011) (Fitzwater, J.). While the Texas Supreme Court has not ruled on the issue, Chief Judge Fitzwater conducted an *Erie* analysis in *Biggers* and concluded that "the TDCPA applies to foreclosure actions." *Id*. Consequently, Defendants' arguments to the contrary are not compelling.

Defendants also assert that Plaintiff's TDCPA claims should be dismissed because Plaintiff has failed to show what damages he suffered from the alleged violations. (Doc. 8-1 at 17). However, Plaintiff alleges in his petition that he suffered damages, including: the late fees added to his account balance, loss of credit worthiness, mental anguish, emotional distress, and having to pay excess or additional interest. (Doc. 1-1 at 14). The Court finds Plaintiff's damages allegations sufficient to survive Defendants' motion to dismiss for failure to state a claim. *See Thomas v. EMC Mortg. Corp.*, No. 4:10-CV-861-A, 2011 WL 5880988 at *10 (N.D. Tex. November 23, 2011) (holding that the plaintiff's TDCPA claims should not be dismissed on summary judgment for failure to show damages where plaintiff's evidence alleged plaintiff suffered damages such as stress, and loss of sleep).

Defendants also argue that Plaintiff's claims under Texas Financial Code section 392.301(a)(8) should be dismissed because Plaintiff has not alleged Defendants used threats. (Doc. 8-1 at 17). Plaintiff, however, did allege that Defendants sent him a notice of foreclosure and subsequently foreclosed on Plaintiff's property in violation of state law. Under TEX. PROP. CODE § 51.002(d), a mortgage servicer must give a property owner 20 days to pay the past due installments before it can deliver a notice of foreclosure sale under section 51.002(b). Plaintiff's petition clearly alleges that he was not given the opportunity to cure his default, much less given the required 20 days to cure his default before the foreclosure notices were delivered. (Doc. 1-1 at 9-10). In fact, Plaintiff alleges that he repeatedly requested to be informed of the amount required to forestall foreclosure, to no avail. *Id.* at 6-10. Accepting these allegations as true, Plaintiff has stated a claim for a violation of TDCPA section 392.301(a)(8) because he has sufficiently pled that Defendants threatened to, and did, take actions against him which were prohibited by the Texas Property Code. *Biggers*, 767 F. Supp. 2d at 732-33. Plaintiff has also suffered damages as required to maintain an action under the civil remedies provision of the TDCPA because, although he remains in possession of the property, he asserts that title to the property has passed to Fannie Mae. (Doc. 1-1 at 10, 15). Accordingly, the undersigned recommends that Defendants' motion to dismiss for failure to state a claim be denied as to Plaintiff's TDCPA claims.

### *2. Deceptive Trade Practices Act (DTPA)*

Defendants also aver that Plaintiff's claims under the DTPA should be dismissed because he is not a "consumer" under the DTPA. (Doc. 8-1 at 18-19). Plaintiff does not contend that he is a consumer under the DTPA, but argues that he is not required to show he is a consumer under the DTPA because he is proceeding through a "tie-in" provision. (Doc. 12-1 at 22). He argues

that he has not presented a claim under the DTPA, but that he only seeks damages permitted under the DTPA for violations of the TDCPA.

Under the Texas Financial Code, "[a] violation of [the TDCPA] is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code [i.e., the DTPA], and is actionable under that subchapter." TEX. FIN. CODE § 392.404(a). However, to plead a plausible DTPA claim, it is not enough to allege that a defendant committed a "deceptive trade practice." Under the DTPA, "a consumer may maintain an action where any of the following [i.e., a list including 'deceptive act or practice'] constitute a producing cause of economic damages or damages for mental anguish." TEX. BUS. & COM. CODE § 17.50. Therefore, Plaintiff must plead sufficient facts to establish his standing to bring suit as a consumer. *Biggers*, 767 F. Supp. 2d at 733.

To qualify as a consumer under the DTPA, (1) the person must have sought or acquired goods or services by purchase or lease and (2) the goods or services purchased or leased must form the basis of the complaint. TEX. BUS. & COM. CODE § 17.45(4). A person who only seeks to borrow money is not a consumer, within the meaning of the DTPA, because lending money involves neither a good nor a service. *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984).

In this case, Plaintiff has not and cannot establish that he is a consumer under the DTPA. Plaintiff's sole purpose was to borrow money. Contrary to Plaintiff's argument, although the DTPA's statutory "tie-in" grants a private right of action to plaintiffs seeking to recover under the TDCPA, the plaintiff still must qualify as a consumer to successfully recover <u>additional</u> damages under the DTPA based on the TDCPA violations. *Mendoza v. American Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex.App.-San Antonio 1996, no writ). Based on the facts pled by

Plaintiff, as a matter of law he is not consumer under the DTPA. Thus, it is recommended Defendants' motion to dismiss be GRANTED as to Plaintiff's request for damages under the DTPA.

**D. Negligent Misrepresentation/Gross Negligence**

Next, Defendants contend that Plaintiff's claim for negligent misrepresentation should be dismissed because it is based on future acts, and Plaintiff has failed to properly plead that he relied on any alleged misrepresentations. (Doc. 8-1 at 19-20). In addition, Defendants aver that Plaintiff's gross negligent claim is barred because, *inter alia*, Defendants did not owe Plaintiff any legal duty. *Id*. at 21. In response, Plaintiff argues that he has sufficiently pled that Defendants misrepresented then-existing facts and that he relied on those misrepresentations to his detriment. (Doc. 12-1 at 24-28).

*1. Negligent Misrepresentation*

A claim for negligent misrepresentation requires a showing that: (1) the defendant made a representation in the course of a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered a monetary loss by justifiably relying on the representation. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 687 n.24 (Tex. 2002). Moreover, a claim for negligent misrepresentation under Texas law contemplates that the "false information" provided by the defendant is a misstatement of *existing* fact. *Clardy Manufacturing Co. v. Marine Midland Business Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996) (emphasis in original). A defendant's misstatement regarding a future action to be taken is not justiciable because a promise to do or

refrain from doing something does not concern an existing fact. *Id.* at 358; *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) (same).

Even assuming that Plaintiff has properly pled a misrepresentation of a then-existing fact, the Court finds that Plaintiff has failed to plead that he relied on such misrepresentation. Reliance is shown when the facts actually pled demonstrate "the defendant's acts and representations induced [the plaintiff] to either act or refrain from acting[.]" *Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center E., Inc.*, 290 S.W.3d 554, 566 (Tex.App.—Dallas 2009, no pet.). Plaintiff's conclusory assertion the he "relied on the representations to his detriment" lacks the factual specificity to survive Defendants' motion to dismiss. Thus, Defendants' motion to dismiss should be GRANTED with respect to Plaintiff's negligent misrepresentation claim. However, it is recommended that Plaintiff be given an opportunity to re-plead the negligent misrepresentation claims with greater specificity.

### 2. Gross Negligence

To establish a claim for negligence, a plaintiff must prove (1) the existence of a legal duty, (2) a breach of that duty, and (3) damages proximately caused by that breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). To establish gross negligence, a plaintiff must also prove by clear and convincing evidence two additional elements: that from the actor's standpoint, the act or omission complained of involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and that the actor had actual subjective awareness of the risk involved but nevertheless proceeded in conscious indifference of the rights and safety or welfare of others. TEX. CIV. PRAC. & REM. CODE § 41.003(a)(3); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Duty is the threshold inquiry in a negligence claim. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *RT Realty,*

*L.P. v. Tex. Utilities Elec. Co.*, 181 S.W.3d 905, 914 (Tex.App. – Dallas 2006, no pet.) ("The threshold inquiry regarding a gross negligence claim is whether a legal duty existed.). If there is no legal duty, liability for negligence cannot exist. *See Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999).

Defendants argue that Plaintiff's gross negligence claims must be dismissed because Defendants owed Plaintiff no legal duty. (Doc. 8-1 at 21). The undersigned agrees that as mortgagor, Defendants did not owe a legal duty to Plaintiff. *See FDIC v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990) (noting that the relationship of mortgagor and mortgagee does not ordinarily involve a duty of good faith); *UMLIC VP LLC v. T & M Sales and Envtl. Sys., Inc.*, 176 S.W.3d 595, 611 (Tex. App.—Corpus Christi 2005, pet. denied) (holding mortgagor did not owe mortgagee a duty in negligence for conduct relating to the foreclosure sale because the deed of trust governs the duties of each party); *Coleman v. Bank of America, N.A.*, 2011 WL 2516169 *1 (N.D. Tex. 2011) (holding that Texas does not "recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a special relationship marked by shared trust or an imbalance in bargaining power"); *Watson v. Citimortgage, Inc.*, __F.Supp.2d__, 2011 WL 4526980 *9-10 (E.D. Tex. 2011) (same). Accordingly, Defendants' motion to dismiss should be GRANTED with respect to Plaintiff's gross negligence claim.

**E. Suit to Quiet Title and Trespass to Try Title**

Defendants also contend that Plaintiff has failed to plead a quiet title claim because Plaintiff has failed to allege he has superior title. (Doc. 8-1 at 23-25). In response, Plaintiff argues that he has indeed plead facts to show he has superior title and asserts that Defendants failed to address his "trespass to try" title claim in their motion to dismiss. (Doc. 12-1 at 29-30). In reply, Defendants acknowledge that they did not address Plaintiff's trespass-to-try title claim,

but also contend that since the quiet title and trespass-to-try title claims are dependent on viable substantive claims, the claims should be dismissed.

A trespass-to-try-title action is the exclusive remedy for parties to resolve competing claims to real property. *See* TEX. PROP. CODE § 22.001. Any suit that involves a dispute over title to land is, in effect, an action in trespass-to-try title, regardless of whether legal or equitable relief is sought. *Jordan v. Exxon Corp.*, 802 S.W.2d 880, 883 (Tex.App.–Texarkana 1991). To prevail on a trespass-to-try-title claim, a party must: (1) prove a regular chain of conveyances from the sovereign; (2) establish superior title out of a common source; (3) prove title by limitations; or (4) prove title by prior possession coupled with proof that possession was not abandoned. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). Relatedly, the principal issue in a suit to quiet title is the existence of a cloud that a remedy in equity will remove. *See Bell v. Ott*, 606 S.W.2d 942, 952 (Tex.Civ.App.–Waco 1980). The plaintiff's goal in such an action is to have the defendant's claims to the property declared to be unfounded. *See Temple Trust Co. v. Logan*, 82 S.W.2d 1017, 1019 (Tex.Civ.App.– Amarillo 1935).

In his petition, Plaintiff alleged that he has title superior to that of Defendant Fannie Mae, because the foreclosure sale of his home was void due to BAC's illegal actions. (Doc. 1-1 at 10, 15); *Martin*, 133 S.W.3d at 265. *See also First Southern Properties, Inc. v. Vallone, Tex.*, 533 S.W.2d 339, 341 (Tex. 1976) (A purchaser of property at a foreclosure sale obtains only such title as the trustee actually had authority to convey). Moreover, several Texas courts have held that where a bank did not strictly comply with the notice requirements of TEX. PROP. CODE § 51.002, as is alleged to be the case here, the resulting foreclosure sale may be void. *Lido Intern., Inc. v. Lambeth*, 611 S.W.2d 622, 624 (Tex. 1981); *Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940, 942 (Tex. App.–Corpus Christi 1988); *Mitchell v. Texas Commerce Bank - Irving*, 680

S.W.2d 681, 682 (Tex. App. –Fort Worth 1984). Because, as discussed herein, Plaintiff has stated claims which should survive the motion to dismiss, Defendant's motion to dismiss Plaintiff's trespass-to-try-title and quiet title actions for failure to state a claim should be DENIED.

**F. Declaratory Judgment**

Finally, Defendants argue that declaratory relief is not available to Plaintiff because such relief is solely dependent on failed causes of action. (Doc. 8-1 at 24). In response, Plaintiff avers that the causes of action upon which the declaratory relief is sought are valid. (Doc. 12-1 at 30). Plaintiff seeks declaratory judgment that Defendants had violated the deed of trust and note, as well as TEX. PROP. CODE § 51.002(d), and that the foreclosure sale should be set aside. (Doc. 1-1 at 16).

When a case is removed from state to federal court, a declaratory action is converted to one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. *Marsh v. Wells Fargo Bank, N.A.*, 760 F.Supp.2d 701, 709 n.4 (N.D. Tex. 2011) (citing *Ondova Ltd. v. Manila Indus., Inc.,* 513 F.Supp.2d 762, 775 n. 12 (N.D.Tex. 2007) (Fitzwater, J.)). That Act provides that any federal court may declare the rights and other legal relations of any interested party. However, the availability of a declaratory judgment depends upon the existence of a judicially-remediable right. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

Here, Plaintiff's request for declaratory relief is dependent on claims which should survive the motion to dismiss, as previously discussed herein. Thus, Defendants' motion to dismiss Plaintiff's requests for declaratory relief for failure to state a claim should be DENIED. *See Watson*, __F.Supp.2d__, 2011 WL 4526980 *9-10 (refusing to dismiss the plaintiff

mortgagors' declaratory judgment action because plaintiffs had stated claims against lender for, *inter alia*, a TDCPA violation).

## IV. LEAVE TO AMEND

Plaintiff requests leave to amend his *Petition* if one or more of his claims are found to be insufficiently pled. (Doc. 12-1 at 30). As stated herein, Plaintiff should be given 14 days from the date of this recommendation to amend his *Petition* to re-plead his claims of unreasonable collection efforts and negligent misrepresentation. However, the Court finds that Plaintiff has already pled his best case regarding the other causes of action that it recommends be dismissed; thus, granting leave to amend those other claims would be futile and cause needless delay. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").

## V. CONCLUSION

Thus, it is recommended that Defendants' *Motion to Dismiss* (Doc. 8) be **GRANTED in part** and **DENIED in part**, as outlined herein. Under the authority given the undersigned pursuant to the District Judge's referral of this case for pretrial management, **Plaintiff is hereby granted 14 days from the date of this recommendation to amend his *Petition* as to claims of unreasonable collection efforts and negligent misrepresentation only, as outlined above.**

**SO RECOMMENDED** on January 10, 2012.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE